# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>White Google Pixel Cellphone<br>Model: Unknown<br>Seized as FP& F: 2025255400002801 Item: 002 | Case No. 24MJ9067 |

**FILED**
Dec 10 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 12/09/2024

*Judge's signature*

City and state: El Centro, California         HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    White Google Pixel Cellphone
Model: Unknown
Seized as FP& F: 2025255400002801 Item: 002
Seized from Edgar Jose HERNANDEZ-Calderon
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 1, 2024, up to and including December 1, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**      White Google Pixel Cellphone
             Model: Unknown
             Seized as FP& F: 2025255400002801 Item: 002
             Seized from Edgar Jose HERNANDEZ-Calderon
             **(Target Device #1)**

**A-2:**      Blue Motorola Cellphone
             Model:  Moto G Play
             Seized as FP& F: 2025255400002801 Item: 003
             Seized from Edgar Jose HERNANDEZ-Calderon
             **(Target Device #2)**

**A-3:**      Black Redmi Cellphone
             Model: Unknown
             Seized as FP& F: 2025255400002801 Item: 004
             Seized from Marcos PANCHO-Escudero
             **(Target Device #3)**

**A-4:**      Blue Samsung Galaxy
             Model:  A21s
             Seized as FP& F: 2025255400002801 Item: 005
             Seized from Armando GIL-Balbuena
             **(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Edgar Jose HERNANDEZ-Calderon (HERNANDEZ) for transportation of illegal aliens Marcos

1

PANCHO-Escudero (PANCHO), and Armando GIL-Balbuena (GIL) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from HERNANDEZ and the Material Witnesses on or about November 30, 2024, incident to the arrest of HERNANDEZ, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On November 30, 2024, at approximately 5:53 a.m., BPA P. Johnson was conducting patrol duties when he heard via service radio transmission from National Guard personal operating a Mobile Surveillance Camera (MSC) in Zone 20 of the Calexico Station area of responsibility (AOR) that two subjects were hiding behind bushes about thirty (30) yards south of Interstate 8 (I-8). This location is a desolate and unpopulated area that is frequently utilized by alien smugglers due to the close proximately to the border and the interstate. Alien smugglers often times guide the group(s) of illegal aliens via cellular phone to predesignated locations along I-8 where they are picked up by load drivers and transported into the interior of the United States. The Remote Video Surveillance System (RVSS) operator observed both subjects south of I-8 concealing themselves in a thick brush. The two subjects attempted to hide and then began running north and across I-8 to the westbound lanes where they were observed being picked up by a dark colored sedan.

11. BPA Johnson located the vehicle matching the description of the load vehicle. The vehicle was determined to be a black 2014 Mercedes CLS 550 bearing California license plates. BPA Johnson requested record checks on the vehicle via El Centro Sector Dispatch (KAK840). Record checks revealed that the vehicle was registered out of Anaheim, California. Anaheim is approximately 230 miles northwest of this location which is approximately one mile north of the U.S.-Mexico International Border Fence (IBF).

12. At approximately 6:58 a.m., BPA Johnson activated his service vehicle emergency lights and sirens, and the Mercedes yielded. BPA Johnson approached the driver side of the vehicle along with BPA L. Diaz and identified themselves as United States Border Patrol Agents to the driver. BPA Johnson observed the driver along with two passengers in the vehicle, one in front passenger seat and one the other in the back seat both trying to conceal their faces and bodies with their dark clothing. The two subjects

5

were later identified as Marcos PANCHO-Escudero (PANCHO) and Armando GIL-Balbuena (GIL).

13. The driver, later identified as Edgar Jose HERNANDEZ-Calderon (HERNANDEZ), claimed that he was traveling to San Luis Rio Colorado, Sonora, Mexico. RVSS had a clear visual of the vehicle traveling westbound before and after picking up the two individuals then continuing west in the opposite direction of where HERNANDEZ was claiming he was going. Based off BPA Johnson's training and experience, and after evaluating the totality of the circumstances including the information received from the RVSS personal BPA Johnson determined that HERNANDEZ was attempting to smuggling GIL and PANCHO into the United States.

14. HERNANDEZ, GIL and PANCHO were placed under arrest and were transported to the Calexico Border Patrol Station for further investigation and processing. At the Calexico Border Patrol Station, all individuals had their fingerprints, and biographical information entered the Department of Homeland Security e3/Ident and IAFIS systems. Records checks revealed that both GIL and PANCHO has no legal status to live, stay, remain, or work in the Untied States, and that neither individual had sought or applied for any legal means to remain in the United States.

15. During a Post-Miranda statement, HERNANDEZ-Calderon stated that he is a United States citizen and resides in Oxnard, CA. HERNANDEZ state that he was traveling to San Lui, Rio Colorado because in December he is going to Mexico. He claimed that he was on the phone with his wife when he received a phone call from someone asking him if he could pick up some of his workers. He claimed he drove towards San Luis, but he couldn't find the workers. HERNANDEZ claimed that the "workers" he intended to pick up didn't come out. HERNANDEZ stated that the subject on the phone told him to drive back to pick up the workers. HERNANDEZ stated after picking up the workers, an "official" got behind him while driving and he was pulled over by law enforcement. HERNANDEZ then stated that he knew where to pick up the individuals because his

significant other was guiding him and directing him where to go and that he would take them to Yuma, Arizona.

16. Material Witness PANCHO-Escudero stated that he is a citizen of Mexico. PANCHO stated that he jumped over the U.S./Mexico International Border Fence. PANCHO stated that he ran with another subject towards the paved road and to look out for the vehicle that would pull over. PANCHO stated that he was instructed by the unknown smugglers to call a phone number to board the vehicle that will be pulled over on the side of the road. PANCHO stated that when he arrived at the side of the paved road, he observed a black vehicle pull over and he boarded the vehicle. PANCHO stated he was arrested shortly afterwards by a U.S. Border Patrol Agent. PANCHO was shown a six-pack photo lineup and was able to identify photo #1 as the driver of the vehicle. Photo #1 depicts Edgar Jose HERNANDEZ-Calderon.

17. Material Witness GIL-Balbuena stated that he is a citizen of Mexico. GIL stated he jumped over the U.S./Mexico International Border Fence. GIL stated that he ran with another subject towards the paved road and looked for a vehicle that would pull over. GIL stated that when he arrived at the side of the paved road, he tried to flag down vehicles by waving his hands. GIL stated that he observed a black vehicle pull over to the side of the road and boarded the vehicle. GIL stated that when he boarded the vehicle he did not talk to the driver. GIL stated he was arrested shortly afterwards by a U.S. Border Patrol Agent.

18. During a search incident to arrest of HERNANDEZ and the Material Witnesses, four cellphones were found: a white Google Pixel cellphone (Target Device #1) was found in the center console of the vehicle by BPA L. Diaz and HERNANDEZ claimed ownership of this cellphone. A blue Motorola cellphone (Target Device #2) was found in the center console by BPA L. Diaz and HERNANDEZ claimed ownership of this cellphone. A black Redmi cellphone (Target Device #3) was located in the pants pocket of PANCHO by BPA L. Diaz and PANCHO claimed ownership of this cellphone. A blue Samsung Galaxy cellphone (Target Device #4) was located in the pants pocket of GIL by

BPA L. Diaz and GIL claimed ownership of this cellphone. All cellphones were seized as evidence.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on November 1, 2024, up to and including December 1, 2024, the day after the arrest of HERNANDEZ and the Material Witnesses.

## METHODOLOGY

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

1 that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

23. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that HERNANDEZ and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by HERNANDEZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 9th day of November, 2024.

_____*LR*_____ 2:49 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-1:   White Google Pixel Cellphone
        Model: Unknown
        Seized as FP& F: 2025255400002801 Item: 002
        Seized from Edgar Jose HERNANDEZ-Calderon
        **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:   Blue Motorola Cellphone
    Model: Moto G Play
    Seized as FP& F: 2025255400002801 Item: 003
    Seized from Edgar Jose HERNANDEZ-Calderon
    **(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**  Black Redmi cellphone
  Model:  Unknown
  Seized as FP& F: 2025255400002801 Item: 004
  Seized from Marcos PANCHO-Escudero
  **(Target Device #3)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**          Blue Samsung Galaxy cellphone
             Model: A21s
             Seized as FP& F: 2025255400002801 Item: 005
             Seized from Armando GIL-Balbuena
             **(Target Device #4)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 1, 2024, up to and including December 1, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.